HAMILTON LAW OFFICE
Timothy L. Hamilton (SBN 196876)
2869 Hidden Springs Circle
Placerville, CA 95667
Telephone: (530) 919-4554
Email: thamiltonesq@earthlink.net

*Attorney for Plaintiff*,
WILLIAM MICHAEL PEEK, TRUSTEE,
ON BEHALF OF ESTATE OF MARY PEEK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MICHAEL PEEK, TRUSTEE, ON BEHALF OF ESTATE OF MARY PEEK,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 1:23-cv-00754-DAD-CKD<br><br>Civil Unlimited<br><br>**VERIFIED AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY, FRAUD, ELDERLY FINANCIAL ABUSE, ANDER BREACH OF FIDUCIARY DUTY UNDER ERISA**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, WILLIAM MICHAEL PEEK, TRUSTEE, ON BEHALF OF ESTATE OF MARY PEEK, alleges against DEFENDANTS as follows:

**PARTIES AND VENUE**

1. ESTATE OF MARY PEEK, represented in this action by Trustee WILLIAM MICHAEL PEEK, (hereinafter "Plaintiff") is, and at all times material hereto was a natural person residing in Calaveras County, California.

2. Defendant, WELLS FARGO BANK, N.A., (hereinafter "Wells Fargo" or "Defendant") is, and at all times material hereto was, a corporation doing business in Calaveras County, California. As such, the appropriate Venue for this matter is Calaveras County, California. Venue is proper in the Superior Court of California of Calaveras County as CCP §395 (a)(b) provides: "Except as otherwise provided by law and subject to the power of the court to transfer actions or proceedings as provided in this title, the superior court in the county where the defendants or some of them reside at the commencement of the action is the proper court for the trial of the action…(b), if a defendant has contracted to perform an obligation in a particular county, the superior court in the county where the obligation is to be performed, where the contract in fact was entered into, or where the defendant or any defendant resides at the commencement of the action is a proper court for the trial of an action founded on that obligation, and the county where the obligation is incurred is the county where it is to be performed, unless there is a special contract in writing to the contrary."

3. PLAINTIFF is ignorant of the true names and capacities of defendants sued herein as DOES 1-10, inclusive and therefore sues these defendants by such fictitious names. PLAINTIFF will amend this Complaint to allege their true names and capacities when ascertained. PLAINTIFF is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged and that the PLAINTIFF's damages as herein alleged were proximately caused by their conduct.

## GENERAL ALLEGATIONS

4. Plaintiff, WILLIAM MICHAEL PEEK ("MICHAEL") is the Executor of the Estate of Mary Linda Peek and the Successor Trustee of the Mary Linda Peek Trust of 2020. Plaintiff is also the living son of decedent and a named beneficiary. His sister, JULIE ANN PEEK, ("JULIE") is a named beneficiary. Plaintiff is the Executor of the Estate of MARY LINDA PEEK and the Successor Trustee of the Mary Linda Peek Trust of 2020. Plaintiff is also the named beneficiary of 75% of the Wells Fargo & Company 401(k) Plan.

5. MARY LINDA PEEK ("MARY') was the mother of MICHAEL and JULIE. She was employed by Wells Fargo Bank and its predecessor Crocker Bank from November 6, 1969 through May 31, 2002, prior to her passing on June 21, 2020.

6. As part of MARY'S plans for succession, she executed her Last Will and Testament on August 14, 2012, naming her two children as sole beneficiaries: MICHAEL 75% and JULIE 25%.

7. On January 15, 2020, MARY executed the MARY LINDA PEEK TRUST OF 2020, which also named her two children as her sole beneficiaries in the same percentages as stated above. That Will and her Trust were in effect when she passed away on June 21, 2020

8. While employed by Wells Fargo and its predecessor Crocker Bank, MARY was given various benefits, including enrollment in a TAP Company Match and Company Plus accounts, a Retirement Plan Account and an Employee Stock Option Plan (ESOP).

9. While employed by Wells Fargo MARY enrolled in the TAP Plan, the ESOP Plan and a 401(k) Plan. Plaintiff is informed and believes that the Wells Fargo & Company 401(k) Plan replaced the TAP Plan and merged with the ESOP Plan. MARY deposited portions of her payroll into the TAP Plan, the ESOP and ultimately with the 401(k) Plan administered by Wells Fargo. Her deposits concluded when she retired after 33 years combined service, on May 31, 2002.

10. As of January 1, 2018, the balance in MARY's 401(k) Plan was $418,792.86.

11. Prior to her retirement, on April 24, 1996, MARY initiated a Workers Compensation Claim after suffering numerous back injuries on the job. That claim was eventually settled on June 27, 2016. The settlement included annual and monthly payments paid by MetLife as settlement of her long-term disability case.

12. During the Workers Compensation case investigation and litigation, between the years 1996 and 2016, MARY's physical and mental impairments were observed, diagnosed and understood fully by Wells Fargo. She was paid various amounts as Long Term Disability through MetLife on behalf of the employer Wells Fargo.

13. Following her initial injury in 1996, and continuing until her death in 2020, MARY's disability impairments included severe and constant back pain, multiple back surgeries, COPD,

depression, cancer, asthma, and myriad other illnesses and conditions, all of which required ongoing treatments and pain medications.

14. Despite knowledge of MARY's chronic health problems and hospitalizations, on or about March 29, 2018, Wells Fargo transferred the sum of $368,962.57 from MARY's 401(k) funds to MetLife Insurance Company. This transfer was made without the knowledge or consent of MARY who was suffering from both physical and cognitive decline.

15. Prior to the transfer of the funds, Wells Fargo claims to have represented to MARY that a portion of the moneys in her 401(k) Plan were required to be paid to the Internal Revenue Service because she had reached the age of 70 ½ (in 2017). She was also told by Wells Fargo that she could take all the remaining funds in the 401(k) Plan, but it would be subject to heavy taxation and penalties; and that the remaining funds would be paid to her at the rate of $2,283.91 gross per month. The sum of $30,281.25 was shown as a taxable distribution, required by her having reached the age of 70. This information was false, manipulative and misleading.

16. Starting in May 2018, MetLife began to pay MARY the sum of $2,283.91 gross per month. The last payment was dated August 1, 2020. Neither that check nor any of the periodic payments from MetLife described them as being a life annuity or in any way warning MARY about the payments terminating on her death.

17. Following the death of MARY, payments from MetLife stopped. Plaintiff thereafter made many inquiries, by himself and through his attorney, asking Wells Fargo and its many subsidiaries and agents what happened to the 401(k) Plan. Wells Fargo and its many different agencies handling the 401(k) Plan refused to provide Plaintiff or his attorney with any information about the 401(k) Plan account, except to occasionally send notices where they reinforced Complainant's belief that the account balance was intact.

18. Eventually, approximately August 2021, Wells Fargo admitted to Plaintiff that it had bought a life annuity for MARY from MetLife in March 2018, and that the life annuity did not call for any payments past her death nor any minimum number of payments. MetLife refused to answer any questions at all, claiming that Wells Fargo was the one who had purchased the annuity. August 2021 was

the first time Complainant found that Wells Fargo and its co-defendant MetLife had converted MARY's 401(k) Plan to an annuity that terminated upon her death.

19. In various claims by Wells Fargo regarding the disappearance of MARY's 401(k) Plan, they never once explained to her that the annuity payments would terminate completely upon her death; and they never once told her she could have purchased an annuity with a minimum term of payments to protect her investment from the possible (probable) early death scenario. Further, they did not take any simple steps to contact her to help her roll over the 401(k) Plan to an IRA Plan, which would have easily protected her investment and provided for similar payments to her prior to her death.

20. At all times relevant to this complaint, MARY was over the age of 65.

# FIRST CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

BY PLAINTIFF AGAINST ALL DEFENDANTS

21. Plaintiff incorporates by reference paragraphs 1 through 20, herein as if fully set forth.

22. "The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Gutierrez v. Giradi* (2011) 194 Cal.App.4th 925.)

23. The conduct of the Defendant established a fiduciary relationship best defined in this situation as " ' "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. This relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. …' " ' " (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29 [130 Cal.Rptr.2d 860], internal citations omitted.)

24. The Defendant Wells Fargo Bank, its subsidiaries and business partners at all times relevant to this complaint owed MARY a fiduciary duty to protect and preserve money belonging to the

decedent in which they were in possession of. Defendant not only failed to preserve MARY'S assets, but made investments that violated good business judgment by converting preserved assets into a life annuity with full knowledge that MARY was suffering from chronic health problems.

25. As a result of Defendant's breaches of fiduciary duty, Plaintiff has been damaged in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
## FRAUD
BY PLAINTIFF AGAINST ALL DEFENDANTS

26. Plaintiff incorporates by reference paragraphs 1 through 25, herein as if fully set forth.

27. "Fraud: 1. A knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment. Fraud is usually a tort, but in some cases (esp. when the conduct is willful) it may be a crime. 2. Misrepresentation made recklessly without belief in its truth to induce another person to act. 3. A tort arising from a knowing misrepresentation, concealment of material fact, or reckless misrepresentation made to induce another to act to his or her detriment. 4. Unconscionable dealing: esp. in contract law, the unfair use of the power arising out of the parties' relative positions and resulting in an unconscionable bargain." [*Contracts* §§ 2-3, 9, 12.] (See Black's Law Dict. 8th ed. 1999, p. 685, col.2.)

28. California Civil Jury Instructions (CACI) 1900 provides: "Intentional Misrepresentation provides that plaintiff claims that defendant made a false representation that harmed [him/her/it]. To establish this claim, plaintiff must prove all of the following: 1. That defendant represented to plaintiff that an important fact was true; 2. That defendant's representation was false; 3. That defendant knew that the representation was false when [he/she] made it, or that [he/she] made the representation recklessly and without regard for its truth; 4. That defendant intended plaintiff rely on the representation; 5. That plaintiff reasonably relied on defendant's representation; 6. That plaintiff was harmed; and 7. That plaintiff's reliance on defendant's representation was a substantial factor in causing [his/her/ its] harm."

VERIFIED AMENDED COMPLAINT

29. Fraud in the inducement is defined as: "Fraud occurring when 'a misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved; an intentional misrepresentation of a material risk or duty reasonably relied on, thereby injuring the other party without violating the contract itself, especially about a fact relating to value." (See Black's Law Dict. 8th ed. 1999, p. 686, col.2.)

30. Wells Fargo maintains that MARY was given written notice that she was required to make a written application to withdraw her 401(k) account no later than March 9, 2018. If she didn't so apply for a withdrawal (aka "distribution"), Wells Fargo maintains it was required by its own 401(k) Plan Document (PD) to buy a life annuity for her. This is ongoing fraud perpetrated against first MARY and now Plaintiff.

   a. The PD was over 300 pages in length, all in fine print and completely unilaterally drafted and enforced by Wells Fargo. The Summary Plan Description (SPD) was shorter, but just as complicated. Copies of the complete PD and SPD are available digitally. The language in those documents supporting Wells Fargo's position is vague, ambiguous and impossible for any employee of Wells Fargo such as MARY to understand.

   b. Nothing in the written notices from Wells Fargo ever told her that the term "life annuity" meant that it would suddenly disappear from her estate when she died, leaving her children with nothing. Nothing in the written notices from Wells Fargo ever told her that the annuities sold by MetLife and other insurance companies could easily have been set up with certain minimum periods, such as "10 year certain."

   c. The language in those documents specifying "life estate" was inserted by Wells Fargo unilaterally and is unconscionable in this application.

   d. The language in the PD and SPD and in the supposed notices sent by Wells Fargo failed to explain or warn MARY that they were going to buy an annuity that would terminate completely when she died. That failure amounted to fraud and a unilateral breach of the fiduciary responsibilities Wells Fargo had to protect MARY's assets. Moreover,

        Wells Fargo used this entire subterfuge as a way of preying on its elder, fragile, unsophisticated employees (and former employees) such as MARY. That amounts to elder financial abuse. At no time did MARY understand those supposed options. Instead, she believed that no action by her would simply result in monthly payments from the 401(k) Plan. In addition to the fraudulent claims by Wells Fargo that MARY was forced to take a life annuity, the very fact that the life annuity did not have a minimum time period such as "10 year certain" meant that it was almost a foregone conclusion that she would lose much of her 401(k) when she died. She was in extremely poor health and clearly should never have been sold such a product, even if she had had the ability to understand it.

31. Defendant represented to the Plaintiff that there are assets available to the Estate and continues to send fraudulent notices regarding the same and has yet to come clean with why and how MARY'S money was invested.

32. As a result of Defendant's concealment and deceit, Plaintiff has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## ELDER FINANCIAL ABUSE

BY PLAINTIFF AGAINST ALL DEFENDANTS

33. Plaintiff repeats and re-alleges paragraphs 1 through 32, herein as if fully set forth.

34. The required elements for Elder Financial Abuse as provided by California Welfare & Institutions Code § 15610.30 are that a person (1) takes, secretes, appropriates, obtains, or retains real or personal property of an elder for a wrongful use or with intent to defraud, or both; (2) assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder for a wrongful use or with intent to defraud, or both; (3) takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an by undue influence. Undue influence means excessive persuasion that result in inequity.

35. Welfare and Institutions Code § 15610.27 provides: " 'Elder' means any person residing in this state, 65 years of age or older."  "The purpose of the [Elder Abuse Act] is essentially to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect." (*Delaney v. Baker*(1999) 20 Cal.4th 23, 33 [82 Cal.Rptr.2d 610, 971 P.2d 986].)

36. Welfare and Institutions Code § 15657.5 provides: "(a) Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, in addition to all other remedies otherwise provided by law, the court shall award to the plaintiff reasonable attorney's fees and costs. The term "costs" includes, but is not limited to, reasonable fees for the services of a conservator, if any, devoted to the litigation of a claim brought under this article. (b) Where it is proven by a preponderance of the evidence that a defendant is liable for financial abuse, as defined in Section 15610.30, and where it is proven by clear and convincing evidence that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse, in addition to reasonable attorney's fees and costs set forth in subdivision (a), and all other remedies otherwise provided by law, the following shall apply: (1) The limitations imposed by Section 377.34 of the Code of Civil Procedure on the damages recoverable shall not apply. (2) The standards set forth in subdivision (b) of Section 3294 of the Civil Code regarding the imposition of punitive damages on an employer based upon the acts of an employee shall be satisfied before any damages or attorney's fees permitted under this section may be imposed against an employer. (c) Nothing in this section affects the award of punitive damages under Section 3294 of the Civil Code."

37. At all times during the transactions which are the subject matter of this lawsuit, decedent was over the age of sixty-five.

38. A California cause of action for elder abuse can be brought after the decedent has passed by anyone with standing, including an heir.  To this day, Defendant continues to mislead and obfuscate the facts regarding the fiduciaries conduct in converting the decedent's assets to a life annuity without her knowledge or approval.  Such conduct is repugnant at best and is actionable to due to the age and infirmary of the decedent prior to her passing. Such conduct is ongoing after the decedent's passing and is now directed at the Estate of the decedent.

39. While the decedent was living, DEFENDANTS, and each of them, engaged in converting assets belonging to the decedent by changing preserved assets to a life annuity with full knowledge of the rapidly declining health of the decedent. DEFENDANTS failed to provide any notice to the decedent or make any effort to inform her that monthly payments were payment from a life annuity and not her retirement account. Further, due to her age and infirmity (which DEFENDANTS had full knowledge of) the decedent was unable to comprehend that after her passing her Estate would be deprived of any further benefits from her investments. Due to the manipulation of decedent's assets, DEFENDANTS deprived the decedent and now her Estate from receiving benefits to be determined at trial but in excess of $305,003.09 plus dividends or other appreciation lost from March 29, 2018 to the date of payment, tax benefits and interest. DEFENDANTS are the proximate and legal cause of damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY AND EQUITABLE RELIEF UNDER ERISA

BY PLAINTIFF AGAINST ALL DEFENDANTS

40. Plaintiff repeats and re-alleges paragraphs 1 through 39, herein as if fully set forth.

41. ERISA's enforcement scheme provides a cause of action against plan fiduciaries for breach of their fiduciary duties, 29 U.S.C. § 1132(a)(2), and a cause of action to remedy plan or ERISA violations with "appropriate equitable relief," *id.* § 1132(a)(3).

42. There are two types of fiduciaries under ERISA. *Depot, Inc. v. Caring for Montanans, Inc.,* 915 F.3d 643, 653 (9th Cir. 2019). First, a party that is designated "in the plan instrument" as a fiduciary is a "named fiduciary." 29 U.S.C. § 1102(a)(2). Second, ERISA provides the following definition of what is sometimes referred to as a "functional" fiduciary: [A] person is a fiduciary with respect to a plan to the extent that person (i) exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) has any discretionary

authority or discretionary responsibility in the administration of such plan. *Id.* §1002(21)(A); *Santomenno v. Transamerica Life Ins. Co.*, 883 F.3d 833, 837 (9th Cir. 2018).

43. "A fiduciary relationship refers to any relation existing between the parties to a transaction where one of the parties has "a duty to act with the utmost good faith for the benefit of the other party." *Martinez v. Welk Grp., Inc.*, 907 F. Supp. 2d 1123, 1133 (S.D. Cal. 2012) (quoting *Gilman v. Dalby*, 176 Cal. App. 4th 606, 613, 98 Cal. Rptr. 3d 231 (2009)). "Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent . . . ." *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29, 130 Cal. Rptr. 2d 860 (2003) (internal quotation marks and citation omitted). "The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party." *Barbara A. v. John G.*, 145 Cal. App. 3d 369, 383, 193 Cal. Rptr. 422 (1983). "Technically, a fiduciary relationship is a recognized legal relationship, such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client, whereas a confidential relationship may be founded on a moral, social, domestic, or merely personal relationship as well as on a legal relationship." *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 271, 130 Cal. Rptr. 2d 601 (2003) (internal quotation marks and citation omitted). Accordingly, these two types of legal relationships can exist simultaneously or separately. *Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 56 Cal. 2d 329, 337, 15 Cal. Rptr. 71, 364 P.2d 247 (1961)." *Quigley v. Am. Claims Servs.*, No. 2:13-cv-01766-KJM-EFB, 2014 U.S. Dist. LEXIS 8597, at *17-19 (E.D. Cal. Jan. 22, 2014).

44. The Defendant Wells Fargo Bank, its subsidiaries and business partners at all times relevant to this complaint owed MARY a fiduciary duty to protect and preserve money belonging to the decedent in which they were in possession of. Defendant not only failed to preserve MARY'S assets, but made investments that violated good business judgment by converting preserved assets into a life annuity with full knowledge that MARY was suffering from chronic health problems.

45. As a result of Defendant's breaches of fiduciary duty, Plaintiff has been damaged in amounts to be proven at trial.

**PRAYER**

WHEREFORE, PLAINTIFF prays that this Court enter judgment against DEFENDANTS on each and every claim for relief set forth above, and award him relief including, but not limited to, the following:

1. For damages according to proof at trial and costs of the lawsuit incurred;
2. Attorney's fees, as allowed by law or contract; and
3. For such other and further relief as the Court may deem proper.

DATED:  December 7, 2023              Respectfully submitted,

                                      HAMILTON LAW OFFICE


                                      By:_____/s/ Timothy L. Hamilton_____
                                      TIMOTHY L. HAMILTON (SBN 196876)
                                      *Attorney for Plaintiff,*
                                      WILLIAM MICHAEL PEEK, TRUSTEE,
                                      ON BEHALF OF ESTATE OF PEEK


**DEMAND FOR JURY TRIAL**

Please take notice that the Plaintiff demands a jury trial in this action.


DATED:  December 7, 2023              HAMILTON LAW OFFICE


                                      By:_____/s/ Timothy L. Hamilton_____
                                      TIMOTHY L. HAMILTON (SBN 196876)
                                      *Attorney for Plaintiff,*
                                      WILLIAM MICHAEL PEEK, TRUSTEE,
                                      ON BEHALF OF ESTATE OF PEEK

## VERIFICATION

I, WILLIAM MICHAEL PEEK, hereby declare as follows:

I am the Trustee of the ESTATE OF MARY PEEK, Plaintiff in this matter. I have read the forgoing complaint and know the contents thereof.

The matters stated in it are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

Executed this 8 day of December, 2023, at 12-8-23, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____
WILLIAM MICHAEL PEEK, TRUSTEE, on behalf of
ESTATE OF MARY PEEK, Plaintiff